United States District Court
Southern District of Texas
**ENTERED**
February 03, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HERBERTH NAHUM FLORES BERRIOS, A# 221 280 689 | § § § § | |
| Petitioner, | § § | CIVIL ACTION NO. 4:25-cv-06043 |
| v. | § § | |
| KRISTI NOEM, *et al.*, | § § | |
| Respondents. | § § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Herberth Nahum Flores Berrios is detained in the custody of officials with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE) at the Montgomery Processing Center. Through counsel, Flores Berrios filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. No. 1). He challenges the lawfulness of his detention by ICE. The respondents[1] have filed a Motion to Dismiss, and in the Alternative for Summary Judgment. (Dkt. No. 9). Flores Berrios has filed a reply. (Dkt No. 10).

## I.    BACKGROUND

The parties do not dispute the relevant facts. Flores Berrios is a citizen of El Salvador. (Dkt. No. 1 at 6). In 2021, Flores Berrios entered the United States without inspection and has been living in the United States since that time. (*Id.* at 18; Dkt. No. 1-1 at 54). He had no contact

---

[1] In the § 2241 petition, Flores Berrios names as respondents Warden Randy Tate of the Montgomery Processing Center, the Houston ICE Field Director Bret Bradford, DHS Secretary Kristi Noem, the Department of Homeland Security, Attorney General Pamela Bondi, and the Executive Office for Immigration Review. (*See* Dkt. No. 1).

with immigration officials until November 3, 2025, when he was pulled over by law enforcement while driving.  (Dkt. No. 1 at 18; Dkt. No. 1-1 at 54).  Following the traffic stop, he was taken into custody by ICE officers.  (Dkt. No. 1 at 18; Dkt. No. 1-1 at 54).  DHS initiated removal proceedings against him and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who has entered the United States without inspection.  (Dkt. No. 1 at 18; Dkt. 1-1 at 5).  On November 28, 2025, Flores Berrios filed a motion for release or to set a bond with an immigration judge.  (Dkt. No. 1 at 19; Dkt. No. 1-1 at 10–49).  On December 4, 2025, the immigration judge, relying on the Board of Immigration Appeals (BIA) decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), denied a change in custody status.  (Dkt. No. 1 at 19; Dkt. No. 1-1 at 51–52).  The immigration judge also ruled that, in the alternative, Flores Berrios was not a flight risk nor a danger to society and indicated a bond of $1,500.  (Dkt. No. 1 at 19; Dkt. No. 1-1 at 51–52).

On December 15, 2025, Flores Berrios filed the instant petition.  (Dkt. No. 1).  He argues that the respondents have violated the provisions of the Immigration and Nationality Act (INA) and its implementing regulations, his due process rights under the Fifth Amendment, and the Administrative Procedure Act (APA).  He also argues that he is a member of the bond-eligible class in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.).  Among other relief, Flores Berrios asks the court to assume jurisdiction over this matter, order his immediate release or in the alternative require that the respondents release him under the bond of $1,500 indicated by the immigration judge, or again in the alternative, direct the immigration court to conduct a custody redetermination hearing under 8 U.S.C § 1226(a).  (*Id.* at 14).

The court ordered the respondents to file a response to the petition.  They filed a Motion to Dismiss, and in the Alternative for Summary Judgment.  (Dkt. No. 9).  The respondents first argue

that Flores Berrios has failed to exhaust administrative remedies by not appealing the immigration court's bond denial to the BIA. The respondents further argue that Flores Berrios is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) based on the statute's plain language and structure, the history of the INA, and the BIA decision in *Matter of Yajure Hurtado*. Last, the respondents assert that the class action in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) is not binding on this court. Flores Berrios has filed a reply. (Dkt. No. 10).

## II.    **LEGAL STANDARD**

"To obtain relief under § 2241, the [petitioner] must establish a violation of either the Constitution or federal law." *Fillingham v. United States*, 867 F.3d 531, 536 (5th Cir. 2017) (citing 28 U.S.C. § 2241(c)(3)); *see also Buenrostro-Mendez v. Bondi*, No. CV H-25-3726, 2025 WL 2886346, at *1 (S.D. Tex. Oct. 7, 2025) ("A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law.") (citation omitted). "The habeas petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696–97 (S.D. Tex. 2025) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

## III.    **ANALYSIS**

### A.    **Exhaustion**

Before considering the merits, the court examines whether a failure to exhaust bars consideration of the petition.

3

The issue in this case is whether the respondents can lawfully detain Flores Berrios pursuant to 8 U.S.C. § 1225(b)(2).  Because "[t]he issue here largely 'boils down to a matter of statutory interpretation,' which 'belong[s] historically within the province of the courts[,]'" the exhaustion doctrine does not bar this court's review of the merits.  *Buenrostro-Mendez*, 2025 WL 2886346, at *3 (quoting *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025)).

Further, exhaustion is not required "where the attempt to exhaust such remedies would itself be a patently futile course of action."  *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018) (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam)).  The respondents argue that Flores Berrios has failed to exhaust administrative remedies by not appealing the immigration court's bond denial to the BIA.  "The BIA recently held in *In Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025) that [immigration judges] lack authority to hear bond requests or grant bond to noncitizens who are present in the United States without inspection and admission . . . ." *Amelia C. P. v. Noem*, No. 3:25-CV-2872-K-BK, 2025 WL 3653872, at *2 (N.D. Tex. Dec. 17, 2025).  "'Requiring [a petitioner] to request a bond hearing before an IJ and (if bond were denied) appeal the decision 'would be inappropriate because it would exacerbate [the petitioner's] alleged constitutional injury—detention without a bond hearing.'"  *Id.* (quoting *Perez v. Noem*, No. 3:25-CV-2920-K-BN, 2025 WL 3532430, at *3 (N.D. Tex. Nov. 14, 2025)), *R&R adopted by*, No. 3:25-CV-2920-K, 2025 WL 3530951 (N.D. Tex. Dec. 9, 2025)); *see also Shi v. Lyons*, No. 1:25-CV-274, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025).

The exhaustion doctrine does not bar judicial review.  The court will now turn to the merits.

4

**B.    Merits of the § 2241 Habeas Petition**

Flores Berrios argues that he cannot be detained under § 1225(b)(2) because he is a noncitizen who was already residing in the country but entered without inspection at the time he was detained by ICE.  He further argues that he may be detained, if at all, under § 1226(a).  The respondents assert that Flores Berrios is properly detained under § 1225(b)(2) because he is an "applicant for admission," which includes a noncitizen "present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  If the court concludes that Flores Berrios is properly detained under § 1225(b)(2), then detention is mandatory.

As noted by a district court in the Western District of Texas, "[t]his case does not present a novel question."  *Mendoza-Menjivar v. Bondi*, No. 1:25-CV-2060-DAE, 2026 WL 89964, at *5 (W.D. Tex. Jan. 12, 2026).  This case is one of several hundred habeas petitions filed in the Southern District of Texas in the last four months challenging the federal government's detention authority of noncitizens under 8 U.S.C. § 1225(b).[2]  The issue presented in the majority of these cases is whether noncitizens (like Flores Berrios) who were already present in the country when detained but who entered without inspection are subject to 8 U.S.C. § 1225(b)(2), which prescribes mandatory detention during removal proceedings, or are subject to 8 U.S.C. § 1226(a), which provides for discretionary detention and a bond hearing regarding whether the noncitizen is a flight risk or poses a danger to the community.  *See Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *2 (S.D. Tex. Oct. 8, 2025).  "The Department of Homeland Security's

---

[2] The number of immigration habeas petitions under 28 U.S.C. § 2241 filed over the last several months in the Southern District of Texas has steadily increased each month: in October 2025, 57 were filed; in November 2025, 124 were filed; in December 2025, 255 were filed; and as of January 27, 2026, 431 have been filed in January, with 242 in the Houston Division alone.  For comparison, a total of 33 immigration habeas petitions were filed in the Southern District of Texas for all of 2024; 2023 saw a total of 35; and just 17 were filed in 2022.

'longstanding interpretation' had been that § 1226, not § 1225, applies to noncitizens . . . who are already present in the country." *Buenrostro-Mendez*, 2025 WL 2886346, at *2 (citing *Savane v. Francis*, 801 F. Supp. 3d 483, 489 (S.D.N.Y. 2025); *see also Arenas-Santoyo v. Dickey*, No. CV H-25-5555, 2025 WL 3724557, at *4 (S.D. Tex. Dec. 23, 2025) ("For decades, the Department of Homeland Security has applied § 1226(a), rather than § 1225(b), to noncitizens who are apprehended while already present in the United States without having been admitted or paroled. The Department's own regulations concerning asylum procedures adopt this interpretation and application of § 1225(b) and § 1226(a).") (internal citation omitted).   "In July 2025, however, [DHS] changed its position. . . . The government now applies § 1225 to *all* applicants for admission." *Buenrostro-Mendez*, 2025 WL 2886346, at *2 (emphasis in original).

"Since July 2025, courts across the country have considered and repeatedly rejected Respondents' broad reading of § 1225(b)(2)." *Mendoza-Menjivar*, 2026 WL 89964, at *5 (collecting cases); *see also Buenrostro-Mendez*, 2025 WL 2886346, at *3 (collecting cases).  This court agrees with the majority of courts who have been presented with this question and have concluded that § 1225(b)(2) does not apply to noncitizens (like Flores Berrios) who entered the United States without inspection and were detained while already present in the country.  The reasons are several.

First, whether the mandatory detention statute of § 1225(b)(2) applies to Flores Berrios is a question of statutory interpretation.  "As the issue in this lawsuit centers on the application of statutory language, the text of the statutes governs." *Shi*, 2025 WL 3637288, at *4.  Section 1225, entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," provides,

> Subject to subparagraphs (B) and (C), in the case of an *alien who is an applicant for admission*, if the examining immigration officer determines that an *alien*

> *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C. § 1229a].

8 U.S.C. § 1225(b)(2) (emphasis added).[3]  "[C]ourts may consider the titles of statutes when interpreting their provisions." *Espinoza Andres v. Noem*, No. CV H-25-5128, 2025 WL 3458893, at *4 (S.D. Tex. Dec. 2, 2025) (citing *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) and *United States v. Moore*, 71 F.4th 392, 397 (5th Cir. 2023)).  "[T]he title of § 1225 states that it applies to the 'expedited removal of inadmissible arriving aliens.'  In contrast, the title of § 1226 states that it applies to the 'apprehension' of noncitizens who are already present in the country." *Id.*  "These titles contradict the respondents' . . . argument that § 1225 applies to noncitizens who have been present in the country for years and instead support the government's longstanding interpretation that § 1225 applies to noncitizens intercepted at the border while § 1226 applies to noncitizens apprehended away from the border years after they entered." *Id.*

---

[3] By contrast, § 1226, entitled "Apprehension and detention of aliens," provides, in pertinent part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General–
> > (1) may continue to detain the arrested alien; and
> > (2) may release the alien on –
> > > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> > > (B) conditional parole; but
> > (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

Under the plain language of § 1225(b)(2), Flores Berrios is not an "arriving alien"; he has been in the United States since 2021.[4]  *See, e.g.*, *Arenas-Santoyo*, 2025 WL 3724557, at *7 ("Arenas-Santoyo is not an 'arriving alien'; he arrived in this country more than three years ago. He therefore does not fall under the plain language of § 1225(b).  Instead, he was arrested while present in the country, and he is being detained pending a decision on whether he is to be removed.").  Nor does § 1225(b)'s language concerning an "alien seeking admission" apply to Flores Berriones because Flores Berriones was not actively seeking to be admitted to the United States at the time he was detained by ICE in November 2025.  *See Covarrubias*, 2025 WL 2950097, at *4 (finding that the petitioner was not subject to § 1225(b) when "he cannot be described as 'seeking admission' because he was not currently and actively seeking to be admitted to the United States when he was apprehended"); *Reyes v. Thompson*, No. SA-25-CA-01590-XR, 2025 WL 3654265, at *3–4 (W.D. Tex. Dec. 12, 2025) (same); *Reyes-Lopez, v. Bondi*, No. 5:25-CV-1800-JKP, 2026 WL 94653, at *5 (W.D. Tex. Jan. 6, 2026) (same).

Second, the Supreme Court has recently discussed the relationship between § 1225 and § 1226: "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2).  It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."  *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  This dicta from the Supreme Court lends support to the conclusion that the respondents may not detain Flores Berriones under § 1225(b).  *See McRorey v. Garland*, 99 F.4th 831, 837 (5th Cir. 2024) (explaining that courts in the

---

[4] On November 3, 2025, DHS issued a Notice to Appear to Flores Berries.  (*See* Dkt. No. 1-1 at 5).  The Notice to Appear itself indicates that Flores Berries qualifies as a "alien present in the United States who has not been admitted or paroled" rather than an "arriving alien."  (*See id.*).

Fifth Circuit "are generally bound by Supreme Court dicta, especially when it is recent and detailed.") (citing *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016)).

Third, a recent amendment to the INA reinforces that noncitizens like Flores Berrioes who entered the United States without inspection and were apprehended while residing in the United States are not subject to mandatory detention under § 1225. As explained by a federal court in the Western District of Texas:

> [In 2025] the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amended § 1226, authorizing mandatory detention for certain categories of individuals who entered the United States without inspection. Specifically, the Act created § 1226(c)(1)(E), which requires mandatory detention for people who both (1) are charged as being inadmissible for entry without inspection or lacking valid documentation to enter the United States **and** (2) have been arrested, charged with, or convicted of certain crimes. 8 U.S.C. § 1226(c)(1)(E). This amendment reinforces the idea that noncitizens who entered the country without inspection but have been present for years—i.e., are not actively "seeking admission"—are generally subject to discretionary detention under § 1226. If all noncitizens charged as inadmissible due to entry without inspection were already subject to mandatory detention under § 1225(b)(2), it would make no sense for Congress to have amended the statute to require mandatory detention for specific subcategories of those individuals.

*Cardona-Lozano v. Noem*, No. 1:25-CV-1784-RP, 2025 WL 3218244, at *5 (W.D. Tex. Nov. 14, 2025) (emphasis in original).

Fourth, "[t]he interpretation that § 1225 applies to recent entries and § 1226 applies to noncitizens already residing in the United States is also supported by longstanding agency regulations and practice." *Id.* at *6; *see also Silva v. Bondi*, No. 1:25-CV-2155-DAE, 2026 WL 90060, at *8 (W.D. Tex. Jan. 12, 2026). "[T]he longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (internal quotation marks omitted). "For decades since the passage of [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA)], the agencies charged with interpreting and enforcing the INA applied § 1226(a) to

noncitizens . . . who entered the U.S. without inspection and were apprehended while residing in the U.S." *Silva*, 2026 WL 90060, at *8 (internal quotation marks and citations omitted); *see also Cardona-Lozano*, 2025 WL 3218244, at *6 ("U.S. Department of Justice's Executive Office for Immigration Review ("EOIR") regulations drafted after the IIRIRA was passed reflect this distinction, and from 1996 to 2025, agencies consistently interpreted § 1225 and § 1226 as providing for mandatory detention of noncitizens arrested near international borders or who recently arrived in the United States and discretionary detention of noncitizens already residing in the United States.").

As briefly discussed above, this approach changed in July 2025 "when DHS introduced internal guidance directing that noncitizens long present in the United States who had not been admitted were now to be treated in the same manner that arriving aliens have historically been treated, i.e., subject to mandatory detention under § 1225(b) and therefore ineligible for custody redetermination hearings in front of immigration judges or release except on parole granted by DHS." *Cardona-Lozano*, 2025 WL 3218244, at *6 (internal quotation marks and citation omitted). The new interpretation of § 1225(b)(2) was adopted by the BIA in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *See Silva*, 2026 WL 90060, at *8. The BIA's new interpretation set forth in *Matter of Yajure Hurtado* is entitled to no deference by this court. *See Loper Bright*, 603 U.S. at 412–13. And in fact, "courts across the country have repeatedly rejected the BIA's novel interpretation of the INA" put forth in *Matter of Yajure Hurtado*.
*Silva*, 2026 WL 90060, at *8 (citing cases).

Here, Flores Berrios entered the United States without inspection in 2021 and has been living here continuously since that time. For the reasons described in this Memorandum Opinion his detention under § 1225(b)(2) violates the INA, and he is entitled to relief in the form of release

10

from detention.[5]  *See Vargas v. Bondi*, No. SA-25-CV-1023-FB (HJB), 2025 WL 3300446, at *5 (W.D. Tex. Nov. 12, 2025) (discussing why immediate release from detention is the appropriate relief), *R&R adopted sub nom. Vargas v. Bondi*, No. SA-25-CV-1023-FB, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025); *Sanchez v. Johnson*, No. 6:25-CV-00503-ADA-DTG, 2025 WL 3707317, at *3 (W.D. Tex. Dec. 10, 2025) (finding that the petitioner's continued detention under § 1225(b)(2) is unlawful and that the petitioner should be immediately released from custody), *R&R adopted,* No. 6:25-CV-00503-ADA-DTG, 2025 WL 3709970 (W.D. Tex. Dec. 22, 2025).

On a final note, Flores Berrios seeks attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.  (*See* Dkt. No. 1 at 28).  The court is sympathetic to this request and acknowledges that courts in other circuits have allowed for attorney's fees and costs in similar circumstances.  *See, e.g.*, *Vacchio v. Ashcroft*, 404 F.3d 663, 670–72 (2d Cir. 2005); *In re Petition of Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985); *Abioye v. Oddo*, No. 3:23-CV-0251, 2024 WL 4304738, at *6 (W.D. Pa. Sept. 26, 2024).  This court, however, is bound by Fifth Circuit precedent which does not authorize attorney's fees for successful petitions brought under 28 U.S.C. § 2241.  *See Barco v. White*, 65 F.4th 782, 785 (5th Cir. 2023) ("[T]he EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions."), *cert. denied*, 144 S. Ct. 553 (2024).  The request for attorney's fees and costs is denied.

---

[5] Flores Berrios's § 2241 petition presents both statutory and constitutional bases for relief. Because the court agrees with Flores Berrios's argument that he cannot be detained under § 1225(b)(2), it does not reach the petitioner's other bases for relief, including any effect *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) may have on this case.

Furthermore, since the respondents do not claim that Flores Berrios is being detained under § 1226, the court "sees no reason to consider" § 1226 as a basis for the petitioner's current detention.  *Reyes v. Thompson*, No. SA-25-CA-01590-XR, 2025 WL 3654265, at *4 (W.D. Tex. Dec. 12, 2025); *see also Mendoza-Menjivar v. Bondi*, No. 1:25-CV-2060-DAE, 2026 WL 89964, at *8 n.8 (W.D. Tex. Jan. 12, 2026); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 223 (D. Mass. 2025).

IV.   **CONCLUSION**

Based on the foregoing, the court **ORDERS** as follows:

1.   The respondents' Motion to Dismiss, and in the Alternative for Summary Judgment (Dkt. No. 9) is **DENIED.**

2.   The petition for a writ of habeas corpus filed by Herberth Nahum Flores Berrioes (Dkt. No. 1) is **GRANTED.**

3.   The respondents are **DIRECTED** to **RELEASE** Petitioner Herberth Nahum Flores Berrios from custody, under appropriate conditions of release, to a public place by **no later than noon on the day immediately following the date of this Order**.

4.   The respondents must **NOTIFY** the petitioner's counsel of the exact location and exact time of the petitioner's release **as soon as practicable and no less than two hours before his release**.

5.   The respondents are enjoined from further detaining the petitioner under the asserted detention authority, 8 U.S.C. § 1225.  If the petitioner is re-detained pursuant to 8 U.S.C. § 1226, all applicable procedures must be followed, including that he be afforded a bond hearing.

6.   The parties shall **FILE** a joint status report **within three (3) days of the date of this Order**, confirming that the petitioner has been released.

It is so **ORDERED**.

SIGNED on February 3, 2026, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge

12